**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH BASKINS, | ) | |
| | ) | Hon. Edmond E. Chang, |
| *Plaintiff*, | ) | District Judge |
| | ) | |
| *v.* | ) | Case No. 17 C 7566 |
| | ) | |
| PATRICK GILMORE, MICHAEL R. | ) | JURY TRIAL DEMANDED |
| KELLY, MARC JAROCKI, Unknown | ) | |
| Chicago Police Department Employees, and | ) | |
| the CITY OF CHICAGO, | ) | |
| | ) | |
| *Defendants*. | ) | |

## RESPONSE IN OPPOSITION TO MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

BACKGROUND ...........................................................................................................1

DISCUSSION ...............................................................................................................4

    I. Plaintiff's Monell Theories Are Pleaded Sufficiently ...............................................4

      A. Widespread Practices ..........................................................................................7

      B. Code of Silence / Failure to Supervise and Discipline.............................................10

      C. Actions of Final Policymakers ............................................................................13

      D. Causation / Moving Force...................................................................................14

    II. Plaintiff's Allegations That the Individual Defendants Acted Within the Scope of Their
      Employment Are Plausibly Pleaded.........................................................................15

CONCLUSION..............................................................................................................17

## TABLE OF AUTHORITIES

### Cases

*AL Matar v. Borchardt*, 2017 WL 2214993 (N.D. Ill. May 19, 2017) ....................................... 6, 10

*Anderson v. Moussa*, 250 F. Supp. 3d 344 (N.D. Ill. 2017).......................................................... 17

*Arias v. Allegretti*, 2008 WL 191185 (N.D. Ill. Jan. 22, 2008)..................................................... 16

*Arrington v. City of Chicago*, 2018 WL 620036, (N.D. Ill. Jan. 30, 2018) .................................. 11, 13, 15

*Barwicks v. Dart*, 2016 WL 3418570 (N.D. Ill. June 22, 2016) .................................................... 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2011) .................................................................. 4

*Board of County Commissioners v. Brown*, 520 U.S. 397 (1997) ................................................. 13

*Brown v. Dart*, 2015 WL 4035568 (N.D. Ill. June 30, 2015) ........................................................ 15

*Cazares v. Frugoli*, 2014 WL 996508 (N.D. Ill. Mar. 11, 2014)..................................................... 15

*Chavez v. Illinois State Police*, 251 F.3d 612 (7th Cir. 2001)......................................................... 4

*Coleman v. Smith*, 814 F.2d 1142 (7th Cir. 1987) ........................................................ 17

*Daniel v. Cook County*, 833 F.3d 728 (7th Cir. 2016) .............................................. 7, 9

*Davis v. Carter*, 452 F.3d 686 (7th Cir. 2006) ............................................................. 7

*Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887 (7th Cir. 2012) ................................ 4

*Doe v. City of Chicago*, 360 F.3d 667 (7th Cir. 2004) ............................................... 16

*Doe v. Clavijo*, 72 F. Supp. 3d 910 (N.D. Ill. 2014) .................................................. 16

*Doe v. Lee*, 943 F. Supp. 2d 870 (N.D. Ill. 2013) ..................................................... 16

*Doe v. Roe*, 2013 WL 2421771 (N.D. Ill. June 3, 2013) ........................................... 16

*Fields v. City of Chicago*, No. 10 C 1168 (N.D. Ill.) .................................................. 9

*Fuery v. City of Chicago*, 2009 WL 270201 (N.D. Ill. May 6, 2009) ......................... 13

*Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012) ........................................ 4

*Gilbert ex rel. James v. Ross*, 2010 WL 145789 (N.D. Ill. Jan. 11, 2010) ............. 6, 13

*Gill v. City of Milwaukee*, 850 F.3d 335 (7th Cir. 2017) ............................................ 7

*Glisson v. Indiana Dep't of Corrections*, 849 F.3d 372 (7th Cir. 2017) ................... 7, 8

*Gudino v. Town of Cicero*, 2003 WL 260707 (N.D. Ill. Jan. 29, 2003) ..................... 13

*Jett v. Dallas Independent School District*, 491 U.S. 701 (1989) ............................. 13

*Johnson v. City of Shelby*, 135 S. Ct. 346 (2014) ...................................................... 4

*King v. Kramer*, 680 F.3d 1013 (7th Cir. 2012) ................................................... 10, 13

*Kluppelberg v. Burge*, 2017 WL 3381717 (N.D. Ill. Aug. 7, 2017) ............................ 9

*LaPorta v. City of Chicago*, 102 F.Supp.3d 1014 (N.D. Ill. 2015) ........................ 12, 13

*Latuszkin v. City of Chicago*, 250 F.3d 502 (7th Cir. 2001) ....................................... 5

*Leatherman v. Tarrant County*, 507 U.S. 163 (1993) .................................................. 5

*Lewis v. City of Chicago*, 235 F. Supp. 3d 1029 (N.D. Ill. July 13, 2016) .................. 6

*Manzera v. Frugoli*, No. 13 C 5626 (N.D. Ill.) ......................................................... 12

*McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011) ................................... 5, 7

*McCormick v. City of Chicago*, 230 F.3d 319 (7th Cir. 2000) ........................................................... 6

*McDorman v. Smith*, 2005 WL 1869683 (N.D. Ill. Aug. 2, 2005) ...................................................... 13

*McGee v. City of Chicago*, 2011 WL 4382484 (N.D. Ill. Sept. 16, 2011) ........................................... 6

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ...........................................*passim*

*Obrycka v. Chicago*, No. 07 C. 2372 (N.D. Ill.) ............................................................................... 12

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) ....................................................................... 13

*Powell v. City of Chicago*, 2018 WL 1211576 (N.D. Ill. Mar. 8, 2018) ............................................. 12

*Sanders v. Sheehan*, 2010 WL 2990121 (N.D. Ill. July 26, 2010) ..................................................... 5

*Serna v. Sears*, 2015 WL 3464460 (N.D. Ill. May 29, 2015) ....................................................... 6, 10

*Spearman v. Elizondo*, 230 F.Supp.3d 888 (N.D. Ill. 2016) ............................................................. 12

*Stanfield v. Dart*, 2011 WL 1429172 (N.D. Ill. Apr. 14, 2011) ......................................................... 6

*Steidl v. Gramley*, 151 F.3d 739 (7th Cir. 1998) .............................................................................. 13

*Stokes v. Ewing*, 2017 WL 2222482 (N.D. Ill. May 22, 2017) ......................................................... 10

*Swanson v. Citibank*, 614 F.3d 400 (7th Cir. 2010) ........................................................................... 4

*Taboas v. Mlynczak*, 149 F.3d 576 (7th Cir. 1998) .......................................................................... 17

*Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293 (7th Cir. 2010) ............................................. 5

*Turner v. M.B. Financial Bank*, 2017 WL 4390367 (N.D. Ill. Oct. 3, 2017) ............................... 11, 12

*U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102 (7th Cir. 2014) ............... 15

*Virnich v. Vorwald*, 664 F.3d 206 (7th Cir. 2011) ............................................................................. 4

*Vodak v. City of Chicago*, 639 F.3d 738 (7th Cir. 2011) .............................................................. 13, 14

*White v. City of Chicago* 829 F.3d 837 (7th Cir. 2016) ...................................................................... 5

*Woodward v. Correctional Med. Servs. of Illinois*, 368 F.3d 917 (7th Cir. 2004) ............................. 10

*Zinn v. Village of Sauk Village*, 2017 WL 783001 (N.D. Ill. Mar. 1, 2017) ...................................... 16

Plaintiff Joseph Baskins, by his attorneys, Loevy & Loevy, responds in opposition to the Motion to Dismiss filed by Defendant City of Chicago (the "City") (Dkt. 33), stating as follows:

## INTRODUCTION

The City moves to dismiss Baskins's claims against it, arguing that he has not plausibly pleaded federal theories under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and that he has not plausibly pleaded that the individual Defendants acted within the scope of their employment. Dkt. 33. To accept the City's arguments would impose a heightened pleading standard that far exceeds what is required by Rule 8. Baskins's *Monell* theories are pleaded in excruciating factual detail, and they include allegations about particular evidence, numerous past incidents, and federal jury verdicts against the City in analogous cases presenting the very same issues, all of which support Baskins's claims that the violation of his constitutional rights was caused by the City's official policies. Baskins has pleaded his *Monell* theories in this much detail even though no reasonable reading of Rule 8 would require such exhaustive factual pleading.

Moreover, ample facts and the admissions of the individual Defendants firmly support Plaintiff's allegation that the individual Defendants acted within the scope of their employment at all relevant times. Even the individual Defendants oppose the City's motion to dismiss on this point. Defendants Jarocki and Kelly's Response, Dkt. 41. Plaintiff has plausibly pleaded claims against the City, and this Court should deny the motion to dismiss.

## BACKGROUND

On October 30, 2014, Baskins went to City Hall in Chicago to marry his fiancée. Amended Complaint, Dkt. 31, ¶¶ 1-2, 18. In a parking garage, Baskins, his fiancée, and family and friends (the "Wedding Party"), encountered Defendants Patrick Gilmore, Michael Kelly, and

Marc Jarocki (the "Officer Defendants"), three Chicago Police Officers who were on duty. *Id.* ¶¶ 3, 19.

The Officer Defendants and the Wedding Party boarded an elevator, where the Officer Defendants verbally harassed Baskins and his cohort, hurling racial slurs at them. *Id.* ¶¶ 4-5, 21, 28-29. Shortly thereafter, the Officer Defendants attacked Baskins without provocation, punching him in the mouth. *Id.* ¶¶ 4-5, 30-31. An altercation ensued in the garage, during which Baskins was beaten and Defendant Gilmore pulled a gun out and pointed it at Baskins and his family. *Id.* ¶¶ 4-5, 32-35. Baskins's friend kicked the gun away from Defendant Gillmore, and fearing for their lives, Baskins and the Wedding Party picked up the gun and ran. *Id.* ¶¶ 34-35.

According to the Officer Defendants' version of events, Baskins and the Wedding Party smelled of marijuana during the encounter at the garage, despite the fact that no one in the group possessed or smelled of marijuana. *Id.* ¶ 36. In their view, the Officer Defendants were exercising their police powers, attempting to arrest Baskins for possession of marijuana at the time of the encounter. *Id.* ¶ 37. The Officer Defendants claimed that Baskins and the Wedding Party had attacked them, provoking their use of force in return. *Id.* ¶ 38.

Baskins was arrested. *Id.* ¶ 6. Based on their encounter with Baskins, the Officer Defendants wrote false reports and took actions as Chicago Police Officers to cause false criminal charges to be filed and pursued against Baskins. *Id.* ¶ 38, 55-56. Baskins was subjected to three years of false criminal proceedings before the State finally dismissed charges against him in July 2017. *Id.* ¶¶ 6-7, 57, 72-92, 133-137.

At all times, the Officer Defendants were on duty and acting within the scope of their employment. *Id.* ¶¶ 3, 13-15, 27, 66, 73, 134, 147, 151. Before their assault on Baskins, the Officer Defendants had been at City Hall to meet with lawyers from the City of Chicago Law

2

Department about a pending police misconduct lawsuit in which they had been named defendants. *Id.* ¶ 23. They drank alcohol at lunch. *Id.* ¶ 24-26. During the attack, they attempted to arrest Baskins, used force against him, and a police service weapon was drawn by Officer Gilmore. *Id.* ¶¶ 4-5, 32-35. Then, immediately after the attack, the Officer Defendants returned to the Law Department, where they met with Assistant Corporation Counselors Reich and Doi, who offered them gum to hide the smell of alcohol on their breath, worked to cover up evidence of their unprovoked assault on Baskins, and later resigned as a result. *Id.* ¶¶ 39-40, 70, 82. The Officer Defendants caused Baskins to be arrested, charged, and subjected to false charges for three years. *Id.* ¶¶ 6-7, 38, 55-57, 72-92, 133-137. Officer Gillmore took disability leave from the Chicago Police Department as a result of the incident; Officers Jarocki and Kelly are on administrative leave. *Id.* ¶¶ 64-69.

Baskins pleads in his complaint that the Officer Defendants each acted within the scope of their employment at all relevant times during their attack on Baskins and during Baskins's arrest, detention, and prosecution. *See* Complaint, Dkt. 31 ¶¶ 3, 13-15, 27, 66, 73, 134, 147, 151. Two of the Officer Defendants have answered, Dkt. 34 (Kelly Answer) & 36 (Jarocki Answer); and Officer Gilmore is in default, Dkt. 30. The Officer Defendants who have answered admit that they acted within the scope of their employment during their interaction with Baskins and at all relevant times following that interaction. Dkt. 34 ¶¶ 14, 73, 134, 147, 151; Dkt. 36 ¶¶ 15, 73, 134, 147, 151.

Baskins's amended complaint contains approximately 90 paragraphs and subparagraphs of factual allegations about the City of Chicago's official policies. *See* Dkt. 31 ¶¶ 93-132. Baskins discusses these factual allegations below in connection with arguments about his *Monell* claim.

**DISCUSSION**

The Federal Rules permit notice pleading and only require "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Dismissal for failure to state a claim under Rule 12(b)(6) is proper only "'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2011)). *Twombly* and *Iqbal*'s plausibility threshold "does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010). Instead, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Id.*

At this stage, "the court must construe all of the plaintiff's factual allegations as true, and must draw all reasonable inferences in the plaintiff's favor." *Id.* Baskins may elaborate on the factual allegations in his complaint (though there is no need for him to do so), so long as he does so in a manner consistent with the pleadings. *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citing *Chavez v. Illinois State Police*, 251 F.3d 612, 650 (7th Cir. 2001)).

## I.     Plaintiff's *Monell* Theories Are Pleaded Sufficiently

The City is liable under § 1983 when "the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010). Plaintiff has pleaded facts supporting each type of *Monell* theory.[1]

---

[1] It is worth noting that Baskins only needs to plead facts, not legal theories. *Johnson v. City of Shelby*, 135 S. Ct. 346 (2014); *Del Marcelle v. Brown Cty. Corp.*, 680 F.3d 887, 909 (7th Cir. 2012) (*en banc*) ("But plaintiffs

4

In arguing otherwise, the City uses language that is more familiar at the summary-judgment stage of the case or at trial. It contends that Plaintiff must "persuade the Court," present proof," and "show" that the violations of Baskins's constitutional rights were the result of City policy. *See* Motion, Dkt. 33 at 5, 7. None of those things is required at the pleading stage. In fact, these arguments apply far too stringent a standard for evaluating Plaintiff's complaint. The Supreme Court and Seventh Circuit have reminded repeatedly that "[a] plaintiff's complaint in a § 1983 municipal liability claim need not meet any heightened pleading standard, but rather must simply set forth sufficient allegations to place the court and defendants on notice of the gravamen of the complaint." *Latuszkin v. City of Chicago*, 250 F.3d 502, 504 (7th Cir. 2001); *see also Leatherman v. Tarrant County*, 507 U.S. 163 (1993); *McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011).

In *White v. City of Chicago* the Seventh Circuit recently reiterated that the bar is not high when it comes to adequately pleading a *Monell* claim. 829 F.3d 837, 843-44 (7th Cir. 2016). There the court considered a complaint that stated that an officer's misconduct was "[i]n accordance with a widespread practice of the police department of the City of Chicago," and the Court concluded that this allegation alone was sufficient to plausibly state a *Monell* claim. *Id.* at 844. This permissive standard for *Monell* pleading is expressed in a huge number of cases. *See, e.g.*, *Sanders v. Sheehan*, 2010 WL 2990121, at *4 (N.D. Ill. July 26, 2010) (noting that the Seventh Circuit has held that even "a single paragraph of allegations with 'a number of conclusions' that the City's 'highest policymaking officers' engaged in a 'widespread custom' of discrimination sufficed to state a claim for municipal liability.") (quoting *McCormick v. City of*

---

are not required to plead legal theories, even in the new world of pleading that is developing in the wake of the Supreme Court's decisions in [*Twombly*] and [*Iqbal*]."). Plaintiff is therefore not required to demonstrate at this stage that each and every *Monell* theory he might pursue once discovery is plausibly pleaded. Nonetheless, Plaintiff discusses a number of *Monell* theories in this response to show that the City's motion for outright dismissal lacks merit.

*Chicago*, 230 F.3d 319 (7th Cir. 2000)); *Stanfield v. Dart*, 2011 WL 1429172, *4-5 (N.D. Ill. Apr. 14, 2011) (allegations that sheriff "engaged in a policy, practice, and pattern of sexual harassment, failure to respond to complaints, and retaliation against those who complain about unlawful conduct" sufficient to state claim); *Gilbert ex rel. James v. Ross*, 2010 WL 145789, at *2 (N.D. Ill. Jan. 11, 2010) ("Plaintiff need not plead particular facts upon which he bases his claim of an official policy or custom, and a short and plain statement that a government entity's official policy or custom caused his injury is sufficient to survive a motion to dismiss."). Baskins's complaint includes far more factual content supporting his *Monell* claims than was present in these cases.

The Rule 8 standard is at root about the facts pleaded in the complaint, and not whether there is evidence to support the claim at the pleading stage. For this reason "[c]ourts in this district have long recognized that plaintiffs with *Monell* claims need only to 'allege a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists.'" *Al Matar v. Borchardt*, 2017 WL 2214993, at *3 (N.D. Ill. May 19, 2017) (quoting *Barwicks v. Dart*, 2016 WL 3418570, at*4 (N.D. Ill. June 22, 2016)); *see also Zinn v. Village of Sauk Village*, 2017 WL 783001, at *7 (N.D. Ill. Mar. 1, 2017); *Serna v. Sears*, 2015 WL 3464460, at *2–3 (N.D. Ill. May 29, 2015) (collecting cases); *McGee v. City of Chicago*, 2011 WL 4382484, at *4 (N.D. Ill. Sept. 16, 2011); *Lewis v. City of Chicago*, 235 F. Supp. 3d 1029, 1030-31 (N.D. Ill. July 13, 2016).

This case law is all but ignored in the City's motion to dismiss, which asks much too much of Baskins's complaint. The City's fundamental mistake in its motion to dismiss is that it evaluates the complaint for the evidence it includes rather than based on its factual allegations. Properly analyzed, Plaintiff's *Monell* claim against the City easily satisfies the pleading

requirements set out above. Indeed, Baskins's federal claims are pleaded in such detail that they would likely satisfy even the heightened standard that the City would impose.

A. **Widespread Practices**

A municipality is liable if their officials knew of a widespread practice presenting an obvious risk of harm but failed to correct it. *Glisson v. Indiana Dep't of Corrections*, 849 F.3d 372, 379 (7th Cir. 2017) (*en banc*) (citing *Monell*, 436 U.S. at 690-91); *Daniel v. Cook County*, 833 F.3d 728, 735 (7th Cir. 2016); *Davis v. Carter*, 452 F.3d 686, 691-92 (7th Cir. 2006). At the pleading stage, a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread that it was a custom. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (*McCauley*, 671 F.3d at 618 (7th Cir. 2011)). Plaintiff here alleges that the City allowed widespread practices to persist whereby Chicago Police Officers used excessive force and caused innocent persons to be prosecuted based on fabricated evidence and by suppressing evidence.

The City's argument that Baskins has failed to plausibly plead these widespread practices cannot hold water. Baskins pleads that the constitutional violations that he suffered were caused by customs among Chicago Police Officers of (1) using unjustified and excessive force against citizens, and (2) arresting, charging, and prosecuting individuals without probable cause, based on false evidence, and while suppressing exculpatory evidence. Dkt. 31 ¶ 97. Specifically, Baskins alleges, Chicago Police routinely use deadly and non-deadly force against citizens, beat citizens, and deploy firearms against citizens without any threat being made to officers and without any justification for doing so. *Id.* ¶ 98. Similarly, he states there is a widespread practice of arresting and pursuing the prosecution of citizens when there is no probable cause to suspect them of any crime, which is accomplished by use of false evidence invented by the police

(including fabricated police reports) that implicates an innocent suspect, by the suppression of exculpatory evidence (including witness statements) relating to the offense, and by providing false statements and testimony to prosecutors and judicial authorities. *Id.* Baskins pleads that the City policymakers had notice of these widespread practices and allowed them to persist, taking no action in response. *Id.* ¶ 97, 99. That is likely enough factual conduct under the Seventh Circuit precedent set out above.[2]

But there is more. The City contends that Baskins "does not allege even one similar incident . . . let alone a pattern of similar incidents" that could have put the City on notice of Baskins's alleged widespread practices. Dkt. 33 at 6. That is not the case at all, and it is difficult to understand how the City could have missed these allegations in Baskins's complaint. Baskins alleges that the widespread practices above result "in routine violations of the constitutional rights of citizens." *Id.* ¶ 100.

With respect to the widespread use of excessive force, in addition to the allegations at issue in this case, the complaint includes the following allegations about other incidents:

- That in January 2017 the Department of Justice released an extensive study of the Chicago Police Department, which concluded that "CPD officers use unnecessary and unreasonable force in violation of the Constitution with frequency and that unconstitutional force has been historically tolerated by CPD," *id.* ¶ 101(a);
- More than a dozen specific incidents of uses of excessive force, drawn from the DOJ report, are explicitly outlined in the complaint, included exactly analogous incidents, incidents involving the use of firearms, incidents involving less lethal force, incidents in which there was no evidence that the victim had made any threat to officers, and incidents involving derogatory language, *id.* ¶ 101(b);
- In the six years that included the incidents at issue, Chicago Police have shot at least 203 people and have used non-lethal force 425 times, *id.* ¶ 101(c)&(d); and

---

[2] Closely akin to this widespread practice theory is the *Monell* theory recognized by the Seventh Circuit in *Glisson*, which provides that a conscious municipal decision not to adopt or to omit needed polices in a particular area—here police uses of force, arrests, and treatment of evidence in criminal proceedings—creates liability under the express policy prong of *Monell*. *Glisson*, 849 F.3d at 379. This is the theory that Baskins pleads in paragraphs 94 through 96 of his complaint. Baskins does not discuss this express policy theory in detail here because it is so closely related to the widespread practice allegations.

- Seven other incidents, close in time to the incident at issue here, in which the City of Chicago had to pay multi-million dollar settlements and judgments as the result of excessive uses of force, *id.* ¶ 101(b)&(e).

Proving these allegations at trial would support a jury verdict against the City. These facts are certainly enough to plausibly support Baskins' allegations.

And with respect to widespread arrest and prosecution of individuals based on fabricated and suppressed evidence, Baskins alleges:

- Multiple incidents from the DOJ report where police reported misconduct that had not occurred or that was contradicted by other evidence, *id.* ¶ 101(b);
- Since the 1980s, specific investigations and civil cases identified in the complaint have revealed widespread arrests and seizures of Chicago citizens, particularly African-Americans like Baskins, without any probable cause, *id.* ¶ 102(a)-(d);
- The City has litigated and lost dozens of cases in the past decade, paying hundreds of millions in settlements and judgments, in which plaintiffs have proved that Chicago Police Officers framed them for crimes by fabricating and suppressing evidence, *id.* ¶ 102(e) (collecting cases);
- The City was found liable by a jury at trail of maintaining a practice of suppressing evidence in clandestine files, *id.* ¶ 102(e)(viii) (citing *Fields v. City of Chicago*, No. 10 C 1168 (N.D. Ill.)).[3]

The case law set out above leaves no doubt that Baskins's allegations are plainly sufficient to state a *Monell* claim based on each of these widespread practice theories. *White*, 829 F.3d at 843-44. Indeed, Courts in this District have concluded already that the DOJ report discussed in the complaint is sufficient by itself to state a claim that the City is liable for a widespread use of force, even when the DOJ report isn't even mentioned in the complaint. *Arrington v. City of Chicago*, 2018 WL 620036, at *3-4 (N.D. Ill. Jan. 30, 2018); *cf. Daniel v. Cook County*, 833 F.3d 735, 742 (7th Cir. 2016) (noting that at trial a DOJ report outlining systemic failings is evidence that can support a *Monell* claim at trial, which means it must be sufficient to support pleadings in a complaint). There are many cases in this district that deny dismissal of widespread practice theories when far less is pleaded in the complaint. *See*, *e.g.*,

---

[3] This verdict has already been found to have preclusive effect on the issue of evidence suppression at trials involving the City. *Kluppelberg v. Burge*, 2017 WL 3381717 (N.D. Ill. Aug. 7, 2017).

*Stokes v. Ewing*, 2017 WL 2222482 at \*4, \*5 (N.D. Ill. May 22, 2017); *Serna v. Sears*, 2015 WL 2464460 at \*3 (N.D. Ill. May 29, 2015).

Defendants' remaining argument for dismissal of Baskins's plausibly pleaded widespread practice theories boils down to a contention that the other instances of misconduct identified in the complaint are too dissimilar to the one at issue in this case to have put the City on notice of the widespread practices. Dkt. 33 at 6-7. This argument lacks merit for a number of reasons. First, Baskins has alleged a number of completely analogous instances of misconduct, as discussed above. Second, as outlined at the start of this section, the cases in this district do not require Baskins to identify incidents of similar misconduct in his complaint. He need only plead that there were widespread incidents (consistent, of course, with Rule 11). *White*, 829 F.3d at 843-44; *Al Matar*, 2017 WL 2214993, at \*3. Third, the many instances of misconduct that are pleaded in the complaint are not so dissimilar from what occurred here that the City is entitled to dismissal under Rule 12(b)(6). Even at summary judgment, the Seventh Circuit has not required a pattern of exactly analogous constitutional violations in order to demonstrate municipal liability. Instead, it has required a widespread pattern of harms stemming from a common source—*i.e.*, a common policymaking failure. *See*, *e.g.*, *King v. Kramer*, 680 F.3d 1013, 1020-21 (7th Cir. 2012). So contrary to the City's argument, it does not matter that Baskins, for example, refers to cases of wrongful conviction when Baskins himself was (thankfully) exonerated after 3 years of criminal proceedings—what matters is that the City's failure to correct widespread practice of evidence fabrication and suppression led to both types of cases.[4] Plaintiff has plausibly pleaded a widespread practice *Monell* theory.

### B. Code of Silence / Failure to Supervise and Discipline

---

[4] Moreover, even in the absence of exactly analogous prior incidents, the Seventh Circuit has found that the City can be liable for the obvious consequences of its inaction, and this case fits that bill, too. *Woodward v. Correctional Med. Servs. of Illinois*, 368 F.3d 917, 929 (7th Cir. 2004).

Baskins also plausibly pleads that the City failed to supervise and discipline Chicago Police Department and allowed a code of silence to persist, which led to an environment of lawlessness in which constitutional violations like those visited upon Baskins could occur. Dkt. 31 ¶¶ 103-125. Courts have held that, without any reference to a pattern of other bad acts, allegations that the City failed to adequately investigate police uses of force, leading to a system in which officers are not meaningfully disciplined or punished, plausibly states a *Monell* claim. *Turner v. M.B. Fin. Bank*, No. 14-CV-9880, 2017 WL 4390367, at *9 (N.D. Ill. Oct. 3, 2017); *see also Arrington v. City of Chicago*, 2018 WL 620036, at *4-5 (N.D. Ill. Jan. 30, 2018); *Cheatham v. City of Chicago*, 2016 WL 6217091 at *6, *7 (N.D. Ill. Oct. 25, 2016). In a case similar to this one, where a use of force began outside of police headquarters, the court concluded that the allegations of the individual case permitted a reasonable inference that the City had adopted a *de facto* policy of tolerating the use of excessive force. *Klingler v. City of Chicago*, 2017 WL 3394722, at *4 (N.D. Ill. Aug. 8, 2017).

Among other things, Baskins pleads that during all relevant times Chicago Police Officers were permitted to use force and to arrest, charge and prosecute citizens without proper training, supervision, or discipline. Dkt. 31 ¶ 103. In addition, Baskins alleges that Chicago Police Officers and their supervisors informally adhered to a so-called "code of silence," according to which Chicago Police Officers agreed not to report misconduct and not to impose discipline for misconduct. *Id.* The code of silence caused the widespread use of excessive force, false arrest, and malicious prosecution described above. *Id.* ¶ 104. Baskins pleads further that Chicago Police Officers receive no training on conducting seizures after police academy; and that the DOJ found "engrained deficiencies in the systems CPD uses to provide officers with supervision and training" and that "CPD provides little incentive, or even opportunity, for

supervisors to meaningfully guide and direct CPD officers." *Id.* ¶ 105-107. Moreover, the code of silence has been explicitly recognized by the DOJ, by the mayor of the City of Chicago, and by the Chicago police union. *Id.* ¶ 108.

In addition to these allegations, the complaint describes numerous recent civil jury verdicts against the City for constitutional violations caused by the code of silence and its failure to supervise and discipline Chicago Police Officers. *See id.* ¶ 109 (discussing *Obrycka v. Chicago*, No. 07 C. 2372 (N.D. Ill.), *Laporta v. Chicago*, No. 14 9665 (N.D. Ill.), *Manzera v. Frugoli*, No. 13 C 5626 (N.D. Ill.)). And there are pages of allegations about the systemic deficiencies in the City's systems for holding officers accountable, and the City's failure to impose discipline for misconduct. *Id.* ¶ 110-125. The Officer Defendants in this case have collectively been the subjects of dozens of citizen complaints and civil rights lawsuits, without ever receiving meaningful discipline. *Id.* ¶ 115-118.

These allegations are sufficient to state a claim that the City's failure to supervise and discipline its officers and its maintenance of a code of silence leads to an environment of non-accountability and to numerous instances of misconduct. That failure to discipline extended to the Officer Defendants in this case and it led to the incident at issue here. Motions to dismiss *Monell* allegations have been denied based on much more sparse allegations. *See*, *e.g.*, *Powell v. City of Chicago*, 2018 WL 1211576 at *9 (N.D. Ill. Mar. 8, 2018); *Turner v. M.B. Financial Bank*, 2017 WL 4390367 at *8, *9 (N.D. Ill. Oct. 3, 2017); *Spearman v. Elizondo*, 230 F.Supp.3d 888, 892 (N.D. Ill. 2016); *LaPorta v. City of Chicago*, 102 F.Supp.3d 1014, 1021 (N.D. Ill. 2015); *Fuery v. City of Chicago*, 2009 WL 270201 at *4, *5 (N.D. Ill. May 6, 2009); *Gilbert Ex Rel. James v. Ross*, 2010 WL 145789 at *3 (N.D. Ill. Jan. 11, 2010); *McDorman v. Smith*, 2005 WL 1869683 at *6, *7 (N.D. Ill. Aug. 2, 2005); *Gudino v. Town of Cicero*, 2003 WL 260707 at

*2 (N.D. Ill. Jan. 29, 2003). Plaintiff's failure to supervise and discipline *Monell* theory is plausibly pleaded.

### C.     Actions of Final Policymakers

The Supreme Court has also held that a municipality can be liable for the deliberate conduct of officials whose acts can fairly be said to be those of the municipality. *Board of County Commissioners v. Brown*, 520 U.S. 397, 403-04 (1997). The City can be liable under *Monell* on a theory that authorized decision makers for the City made a decision that violated Baskins's constitutional rights. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Baskins has plausibly pleaded this type of *Monell* theory as well.

First, the decision to intentionally omit policies necessary to solve a problem is intentional conduct by policymakers sufficient to sustain a *Monell* claim. *Vodak v. City of Chicago*, 639 F.3d 738, 747-48 (7th Cir. 2011) (actions of policymakers about how to implement policy give rise to liability). Accordingly, City policymakers' decision not to adopt policies to respond to widespread excessive force and misconduct regarding evidence in criminal cases renders the City liable. *King v. Kramer*, 680 F.3d 1013, 1021 (7th Cir. 2012) (where municipality has "actual or constructive knowledge that its agents will probably violate constitutional rights, it may not adopt a policy of inaction"); *Steidl v. Gramley*, 151 F.3d 739, 741 (7th Cir. 1998) (policymaker aware of a systematic lapse in policy who fails to correct renders municipality liable).[5]

Second, Plaintiff has plausibly pleaded that lawyers with the Chicago Law Department, acting pursuant to their delegated responsibility to provide legal advice to Chicago Police

---

[5] Contrary to the City's suggestion, Dkt. 33 at 10-11, Plaintiff need not name the particular policymakers who failed to act at this stage of the case. In most cases the Court makes this determination after evidence is gathered and before a jury is charged. *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989). Plaintiff has not located a case (and the City does not cite one) that requires specific policymakers to be named in a complaint.

Officers, learned of the Officer Defendants' misconduct and immediately worked to cover it up, suppressing evidence that should have been available to Baskins to contest his wrongful arrest and prosecution. Dkt. 31 ¶¶ 126-129. Baskins alleges that these members of the Law Department were final policymaking officials in the area in which they acted. *Id.* In addition, he pleads that these policymaking officials helped and advised the Officer Defendants to suppress evidence in Baskins' criminal case. *Id.* Whether a person has final policymaking authority turns on whether her decisions are subject to meaningful review; whether the person is constrained by policies made by others; and whether the person acts within her grant of authority. *Vodak v. City of Chicago*, 639 F.3d 738, 748 (7th Cir. 2011). Baskins has plausibly pleaded a claim that Law Department attorneys acted as final policymakers, and the City is liable on that theory as well.

> ### D.     Causation / Moving Force

In several places throughout its brief, the City asserts that Baskins has failed to plausibly plead that the policies, practices, and actions of final policymakers described above caused the constitutional violations that Baskins suffered. This argument has no merit. Baskins's complaint is replete with allegations that the City's policies and practices, implemented by the individual Defendants and final policymakers for the City, resulted in the violation of his constitutional rights. *See*, *e.g.*, Dkt. 31 ¶¶ 77, 85, 92, 93, 96, 100, 103, 124-125. The connection between the widespread practices described above—regarding excessive use of force, false arrest and prosecution, and code of silence—are plainly connected to the excessive use of force and false arrest and prosecution that Baskins experienced. That these policies and practices were the moving force behind the constitutional violations at issue is plausibly pleaded. *Arrington*, 2018 WL 620036, at *4-5; *Brown v. Dart*, 2015 WL 4035568, at *3 (N.D. Ill. June 30, 2015); *Cazares v. Frugoli*, 2014 WL 996508, at *5 (N.D. Ill. Mar. 11, 2014).

14

\* \* \*

Plaintiff's federal claims against the City based on its policies and practices described above are more than plausibly pleaded. This Court should deny the City's motion to dismiss those claims.[6]

## II. Plaintiff's Allegations That the Individual Defendants Acted Within the Scope of Their Employment Are Plausibly Pleaded

Baskins also plausibly pleads that the individual Defendants acted within the scope of their employment at all relevant times. Adopting the City's narrow reading of the law governing scope of employment would mean that employees who commit misconduct are never acting within the scope of their employment. In addition, the City's argument for dismissal on the grounds that the Officer Defendants did not act within the scope of their employment is nothing more than a factual attack on allegations in the complaint, an approach that is not permissible at this stage of the case. Finally, it is notable that the individual Defendants themselves admit to having acted within the scope of their employment at all relevant times and oppose the City's motion to dismiss on this point.

"The General rule . . . is that an employer is liable for an intentional tort committed by its employee only if the tort was in furtherance of his employment, that is, only if the employee's motive, or at least a motive, in committing the tort was to serve his employer." *Doe v. City of Chicago*, 360 F.3d 667, 670 (7th Cir. 2004) (citations omitted). In cases where a scope of employment question is contested, typically the issue must be resolved at trial—even summary judgment is too early. *Id.* at 673. Where the facts are in dispute, as they are here, the issue certainly cannot be resolved at the motion-to-dismiss stage. *Doe v. Clavijo*, 72 F. Supp. 3d 910,

---

[6] To the extent that the Court found some deficiency in pleading, a dismissal without prejudice and with leave to amend is the only appropriate course of action. *U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1109 (7th Cir. 2014) ("Ordinarily the dismissal of a deficient pleading is without prejudice, thus giving the pleader an opportunity to replead.").

915 (N.D. Ill. 2014); *Doe v. Roe*, 2013 WL 2421771, at *4-5 (N.D. Ill. June 3, 2013); *Doe v. Lee*, 943 F. Supp. 2d 870, 880 (N.D. Ill. 2013); *Arias v. Allegretti*, 2008 WL 191185, at *6 (N.D. Ill. Jan. 22, 2008). The City's factual dispute about whether the individual Defendants were acting within the scope of their employment cannot be resolved at this stage of the case.

As discussed above, Baskins's complaint is packed with allegations supporting the conclusion that the Officer Defendants acted within the scope of their employment. Dkt. 31 ¶¶ 3, 13-15, 27, 66, 73, 134, 147, 151. Plaintiff alleges that the Officer Defendants were on duty, *id.* ¶¶ 3, 19, and to the extent that the Defendants contest that they were on duty, that factual dispute must wait for a later phase of the case. Even if the Officer Defendants had not been on duty, Plaintiff alleges many other facts showing that the Officers acted within the scope of their employment.

The Officer Defendants exercised their police powers when they attempted to arrest Baskins on suspicion that he possessed marijuana, and also when they used force against him to effectuate that arrest, including by using their service weapon. *Id.* ¶¶ 4-5, 32-35. Both before and after their attempted arrest of and use of force against Baskins, the Officer Defendants were meeting in their capacity as Chicago Police Officers with the City's Law Department regarding alleged misconduct they had committed as police officers in another civil rights case. *Id.* ¶ 23. During their meeting after the attack, the Officer Defendants worked with officials from the Law Department to cover up their misconduct. *Id.* ¶¶ 39-40, 70, 82. Moreover, exercising their police powers further, the Officer Defendants caused Baskins to be arrested, charged, and subjected to false charges for three years. *Id.* ¶¶ 6-7, 38, 55-57, 72-92, 133-137. Officer Gillmore took disability leave from the Chicago Police Department as a result of the incident. *Id.* ¶¶ 64-65.

Importantly, two of the three Officer Defendants admit that they were acting within the scope of their employment as employees of the Chicago Police Department when they interacted with Baskins on October 30, 2014, and at all times that followed during the arrest, prosecution, and detention of Baskins. Dkt. 34 ¶¶ 14, 73, 134, 147, 151; Dkt. 36 ¶¶ 15, 73, 134, 147, 151. The individual Defendants have even filed their own response in opposition to the City of Chicago on this issue.

It makes little difference that the Officer Defendants allegedly drank alcohol while on duty on the day they encountered Baskins. Nor does it matter that they used unreasonable force against him or drew their weapon on Baskins and his family. The fact that actions are misconduct, or even criminal, does not render them outside of the scope of employment. *Taboas v. Mlynczak*, 149 F.3d 576, 582-83 (7th Cir. 1998) (Even criminal acts of an employee can fall within the scope of their employment if they were partly motivated by the interests of their employer. (citing *Right v. City of Danville*, 675 N.E.2d 110, 118 (1996); *Anderson v. Moussa*, 250 F. Supp. 3d 344, (N.D. Ill. 2017) ("[T]he scope of employment concept recognizes that an officer can exceed or abuse his authority—even intentionally or criminally—and still be acting within the scope of his employment.") (citing *Coleman v. Smith*, 814 F.2d 1142, 1149 (7th Cir. 1987)).

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant City of Chicago's motion to dismiss.

RESPECTFULLY SUBMITTED,

**JOSEPH BASKINS**

/s/ Josh Loevy
Josh Loevy

17

*Attorneys for Plaintiff*
Arthur Loevy
Jon Loevy
Steven Art
Joshua Loevy
Loevy & Loevy
311 N. Aberdeen St.
Third Floor
Chicago, Illinois 60607
(312) 243-5900
joshl@loevy.com

## <u>CERTIFICATE OF SERVICE</u>

I, Joshua Loevy, an attorney, certify that on March 20, 2018, I served the foregoing Response in Opposition to Motion to Dismiss on all counsel of record using the Court's CM/ECF system.