# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOSEPH BASKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 17 C 7566 |
| | ) |
| PATRICK GILMORE, MICHAEL R. KELLY, MARC JAROCKI, Unknown Chicago Police Department Employees, and the CITY OF CHICAGO, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

_____

| | |
|---|---|
| MICHAEL R. KELLY and MARC JAROCKI, | ) ) ) |
| Crossclaim-Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF CHICAGO, a Municipal Corporation, | ) ) ) |
| Crossclaim-Defendant. | ) |

**DEFENDANTS/CROSSCLAIM-PLAINTIFFS' MICHAEL R. KELLY AND MARC JAROCKI'S CROSS-CLAIM AGAINST CO-DEFENDANT/CROSSCLAIM-DEFENDANT CITY OF CHICAGO**

NOW COMES, the Defendants, Crossclaim-Plaintiffs, MICHAEL R. KELLY and MARC JAROCKI, by and through their attorneys, GOTTREICH GRACE & THOMPSON, and for their Cross-Claim against Co-Defendant, Crossclaim-Defendant, CITY OF CHICAGO, states as follows:

**Introduction**

1.      By and through this Cross-claim, MICHAEL R. KELLY and MARC JAROCKI, seek indemnification from Co-Defendant and Crossclaim-Defendant, CITY OF CHICAGO, as their employer and principal at the time of the October 30, 2014, occurrence with Joseph Baskins.

2.      Joseph Baskins filed a lawsuit, hereinafter referred to as "the underlying case", alleging civil rights violations pursuant to § 1983 and state law claims against the City of Chicago and three officers in their individual and official capacities, namely Sergeant Patrick Gilmore, Michael R. Kelly and Marc Jarocki as well as other unknown officers and employees of the City of Chicago.

3.      Joseph Baskins asserts several claims under 42 U.S.C. §1983 including federal malicious prosecution, conspiracy, violations of his due process rights, and a *Monell* claim against the City of Chicago for alleged unconstitutional policies and practices. Joseph Baskins also alleges state law claims against the Defendants including civil conspiracy, respondeat superior and indemnification.

4.      In the underlying suit Joseph Baskins asserts that on October 30, 2014, ("date of the occurrence") Officer Kelly, Officer Jarocki and Sgt. Gilmore instigated a verbal and physical altercation with Joseph Baskins which caused him to sustain damages and which left one officer with serious and possibly permanent injury. Plaintiff has alleged all three (3) officers were acting within the scope of their employment with the City of Chicago at the time of the occurrence as alleged and seeks indemnification under Illinois State law and respondeat superior for the officers alleged conduct. The City of Chicago refutes Joseph Baskins claims that the Officers were acting within the scope of their employment.

5. For purposes of Officer Kelly and Officer Jarocki's Cross-claim, "the occurrence" refers to the timeframe beginning when Joseph Baskins first encounters the Officers on the 12th Floor of the parking garage located at 172 W. Madison Street in Chicago, Illinois and thereafter.

## Parties

6. Crossclaim-Plaintiff, MICHAEL R. KELLY, ("Officer Kelly") is and was at all times relevant on October 30, 2014, a sworn officer of the Chicago Police Department and employed by the City of Chicago.

7. Officer Kelly is a forty-six (46) year old Chicago Police Officer appointed to the Police Department on December 18, 2000, and is a Sergeant Major in the United States Army with approximately twenty-nine (29) years of military service.

8. On October 30, 2014, Officer Kelly's regular unit of assignment was with the mounted unit in the 7th District and is currently assigned to call-back duty with the Chicago Police Department.

9. Crossclaim-Plaintiff, MARC JAROCKI, ("Officer Jarocki") is and was at all times relevant on October 30, 2014, a sworn officer of the Chicago Police Department and employed by the City of Chicago.

10. Officer Jarocki is a thirty-six (36) year old Chicago Police Officer appointed to the Police Department on October 22, 2002.

11. Officer Jarocki's regular unit of assignment on October 30, 2014, was to the 7th District tactical response team and is currently assigned to call-back duty at the Chicago Police Department.

12. Crossclaim-Defendant, CITY OF CHICAGO, ("City of Chicago") is a Municipal Corporation in Illinois and is and was the employer of Crossclaim-Plaintiffs, MICHAEL R.

KELLY and MARC JAROCKI as well as Sergeant Patrick Gilmore who is also named as a co-defendant in the underlying suit brought by Joseph Baskins.

## Jurisdiction and Venue

13. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 as the underlying claims by Joseph Baskins seek redress pursuant to 42 U.S.C. §1983 and Illinois law for alleged deprivations of his constitutional rights for which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

14. Jurisdiction over Crossclaim-Plaintiffs' claims is proper pursuant to Fed. R. Civ. P. Rule 13(g) as their claims arise out of the same occurrences that is the subject matter of the original underlying lawsuit which seeks money damages for which the Crossclaim-Defendant City of Chicago may be liable to Crossclaim-Plaintiffs for all or part of said claims asserted in the underlying case.

15. Venue is proper pursuant to 28 U.S.C. § 1391(b) as the individual and corporate parties reside within this judicial district and the events as alleged occurred within this judicial district.

## General Factual Allegations Common to All Counts

16. On October 30, 2014, Officer Kelly, Officer Jarocki and Sgt. Gilmore were assigned to report to the Office of the Corporation Counsel of the City of Chicago's Law Department regarding a pending case set for trial in the Northern District of Illinois, Eastern Division.

17. On the morning of October 30, 2014, Officer Kelly drove to the 22nd District and parked his personal vehicle in the employee parking lot before boarding a train with Sgt. Gilmore who had driven separately and proceeded to the Office of Corporation Counsel located on the 9th

Floor of 30 N. LaSalle St., in Chicago, Illinois, to meet with attorneys from the City of Chicago Law Department.

18. On the morning of October 30, 2014, Officer Jarocki drove his personal vehicle to the Washington Madison Wells parking garage located at 172 W. Madison in Chicago, Illinois and parked on the 12th floor before walking to the Office of Corporation Counsel located on the 9th Floor of 30 N. LaSalle St., in Chicago, Illinois, to meet with attorneys from the City of Chicago Law Department.

19. At all times relevant on the date of the occurrence Officer Kelly was dressed in plain clothes, had his service weapon and had his Chicago Police Department issued star or badge clipped and displayed on his belt.

20. At all times relevant on the date of the occurrence, Officer Jarocki was dressed in plain clothes, had his service weapon and had his Chicago Police Department issued star or badge either displayed on his belt or in his pocket.

21. At all times relevant on the date of the occurrence and based upon reasonable belief, Sgt. Gilmore was dressed in plain clothes, had his service weapon and had his Chicago Police Department issued star or badge clipped and displayed on his belt.

22. Officer Kelly, Officer Jarocki and Sgt. Gilmore were ordered to meet with the Corporation Counsel of the City of Chicago Law Department on October 30, 2014, as part of their duties and within the scope of their employment as City of Chicago Police Officers.

23. Following their meeting with Corporation Counsel of the City of Chicago Law Department, Officer Kelly, Officer Jarocki and Sgt. Gilmore walked to the Cactus Bar & Grill located at 404 S. Wells Street in Chicago, Illinois.

24. Following the Cactus Bar & Grill, Officer Jarocki, Officer Kelly and Sgt. Gilmore returned to the City of Chicago Law Department's office of the Corporation Counsel to ensure the officers were properly signed out.

25. After leaving the office of Corporation Counsel Officer Jarocki, Officer Kelly and Sgt. Gilmore walked to the parking garage where Officer Jarocki had previously parked his vehicle and rode the elevator up to the 12th Floor.

26. Upon their attempt to exit the elevator, Officer Kelly, Officer Jarocki and Sgt. Gilmore were confronted with a group of individuals ("Baskins party") including Joseph Baskins who began attempting to enter the elevator as the three (3) Officers were attempting to exit resulting in the Baskins party becoming loud and aggressive toward the three (3) officers.

27. Officer Jarocki, Officer Kelly and Sgt. Gilmore proceeded to exit the elevator, walked through the 12th Floor lobby doors and began walking up the aisle to Officer Jarocki's motor vehicle during which time Joseph Baskins and other members of the Baskins party followed the officers and shouted verbal insults and obscenities.

28. In an attempt to de-escalate the situation, Officer Jarocki and Officer Kelly continued walking up the aisle toward Officer Jarocki's motor vehicle.

29. At the time the occurrence became physical Officer Jarocki was positioned furthest up the aisle towards his car with Officer Kelly a short distance behind him and Sgt. Gilmore a short distance behind Officer Kelly and closest to Joseph Baskins and the Baskins party.

30. At some point immediately thereafter, Officer Kelly turned around and saw Joseph Baskins run around Sgt. Gilmore cutting off Sgt. Gilmore from the other two officers and Jarocki's vehicle.

6

31. Thereafter, Joseph Baskins struck Sgt. Gilmore in the face with a closed fist and a physical altercation ensued resulting in Sgt. Gilmore falling to the ground where Joseph Baskins then mounted Sgt. Gilmore and continued to strike him with a closed fist while Sgt. Gilmore lay defenseless.

32. As employees of the City of Chicago Police Department, Police Officers are required to adhere to the Chicago Police Department rules, regulations and orders while on or off duty as a condition of their employment.

33. As such and pursuant to City of Chicago Police Department rules regulations and/or orders, Chicago Police Officers are required to take some police action when the commission of a crime occurs in their presence, whether on or off duty.

34. After witnessing Joseph Baskins initial strike and continuous beating of Sgt. Gilmore and reasonably believing Joseph Baskins had committed a crime in his presence and Sgt. Gilmore to be unconscious and sustaining serious and continuing injury, Officer Kelly responded to the emergency situation as required by the Chicago Police Department and attempted to perform an emergency takedown as trained by the Chicago Police Department on Joseph Baskins and gave verbal direction to Joseph Baskins to stop punching Sgt. Gilmore.

35. As Officer Kelly attempted to perform the emergency takedown on Joseph Baskins, Joseph Baskins resisted and began to strike Officer Kelly about the face causing Officer Kelly to sustain a minor injury to his facial area and knocking Officer Kelly's prescription glasses onto the ground.

36. Joseph Baskins and the Baskins party then suddenly fled in unknown directions while Officer Jarocki and Officer Kelly rendered aid to Sgt. Gilmore who was semi-conscious, bleeding and still laying prone on the ground.

37. After witnessing Joseph Baskins continuous beating of Sgt. Gilmore and reasonably believing Joseph Baskins had committed a crime in his presence, Officer Jarocki assisted Officer Kelly in responding to the emergency situation as required by City of Chicago Police Department rules, regulations and/or orders and retrieved his vehicle in an effort to provide the injured Sgt. Gilmore with safety and medical attention.

38. Officer Kelly and Officer Jarocki later learned that at some point during the melee Sgt. Gilmore's service firearm was missing and after searching the area concluded that it had been stolen by Joseph Baskins and/or other members of the Baskins party.

39. Based upon reasonable information and belief, Sgt. Gilmore sustained severe injuries as a result of Joseph Baskins attack which required emergency medical attention and surgical intervention including but not limited to fractures to his facial area, a traumatic brain injury, and other impairments.

40. While Officer Kelly and Officer Jarocki were rendering aid to Sgt. Gilmore, they were approached by civilian and/or parking garage security personnel who advised the Officers they would call 911 for emergency medical attention.

41. Fearing for their safety, Officer Jarocki retrieved his vehicle and he and Officer Kelly then escorted Sgt. Gilmore into the car in an effort to relocate to a safer area and make Sgt. Gilmore more accessible to responding emergency personnel.

42. While relocating, Officer Kelly and Officer Jarocki learned of Sgt. Gilmore's missing service weapon and Officer Kelly returned to the scene of the occurrence to search and recover the missing weapon which he reasonably believed could pose a great threat of serious bodily harm to the public if left unsecured.

43. After failing to locate the firearm and reasonably believing it had been stolen by Joseph Baskins or members of the Baskins party, Officer Kelly and Officer Jarocki relocated Sgt. Gilmore to await medical personnel at the bottom of the parking garage.

44. After no medical personnel or police responded and fearing for their safety believing Joseph Baskins and the Baskins party to now be armed, the officers ultimately sought safe harbor at the nearby Office of the Corporation Counsel of the City of Chicago where Officer Kelly then called 911 to advise of their change in circumstance and location.

45. Accompanied by employees of the City of Chicago Law Department, Officer Kelly and Officer Jarocki returned to the scene of the occurrence to provide any information to assist the investigating and responding officers on-scene.

46. Officer Kelly and Officer Jarocki were only witnesses in the criminal case filed against Joseph Baskins and did not arrest, investigate or prosecute Joseph Baskins in relation to the criminal case.

**Count I - Indemnification**
*Michael R. Kelly against the City of Chicago*

47. Crossclaim-Plaintiff MICHAEL R. KELLY hereby adopts and incorporates by reference each of the factual allegations contained in Paragraphs 1 through 46 of his Cross-claim against Crossclaim-Defendant CITY OF CHICAGO as this Paragraph 47 of Count I as though fully set forth herein.

48. Under Illinois law (745 ILCS §10/9-102) public entities such as the City of Chicago are directed to pay any tort judgment for compensatory damages entered against its employees acting within the scope of their employment with said public entity.

49. Officer Kelly is, and at all times relevant, was a Chicago Police Officer and employee of the City of Chicago acting within the scope of his employment as a Chicago Police

Officer in responding to the emergency situation occurring on October 30, 2014, after reasonably believing that he had witnessed Joseph Baskins commit a crime in his presence.

50. As employees of the City of Chicago Police Department, Officers are required to adhere to the Chicago Police Department rules, regulations and orders while on or off duty as a condition of their employment.

51. As such and pursuant to City of Chicago Police Department rules, regulations and/or orders, Chicago Police Officers are required to take some police action when the commission of a crime occurs in their presence, whether on or off duty.

52. At the time of Officer Kelly's emergency takedown of Joseph Baskins, he was taking police action and acting within the scope of his employment as a Chicago Police Officer employed by the City of Chicago in that he was responding to an emergency situation and reasonably believed he had witnessed a crime being committed and intervened as he was trained to do by the Chicago Police Department.

53. As required by the City of Chicago Police Department rules, regulations and/or orders, Officer Kelly took police action by attempting to perform an emergency takedown of Joseph Baskins after reasonably believing Joseph Baskins was committing a crime in his presence.

54. The police action taken by Officer Kelly in performing an emergency takedown on Joseph Baskins, whom he reasonably believed was committing a crime, is the kind of act Officer Kelly is employed and trained to perform as a City of Chicago Police Officer.

55. Accordingly, the City of Chicago is statutorily obligated by law to indemnify and pay any judgment for compensatory damages, including associated attorneys fees and costs entered against Officer Kelly arising out of the October 30, 2014, occurrence.

WHEREFORE, Crossclaim-Plaintiff, MICHAEL R. KELLY, respectfully requests that this Court enter judgment in his favor and against Crossclaim-Defendant CITY OF CHICAGO for indemnification for any judgment, including attorneys' fees and costs, that may be entered against him and for Joseph Baskins in the underlying lawsuit, or, alternatively, for contribution from Crossclaim-Defendant City of Chicago in an amount commensurate with the parties relative degree of fault in causing or contributing to the occurrence, injuries, harm and damages, if any, complained of by underlying Plaintiff Joseph Baskins and for such other relief as this Court deems fair, just and equitable.

## Count II - Respondeat Superior
*Michael R. Kelly against the City of Chicago*

56. Crossclaim-Plaintiff MICHAEL R. KELLY hereby adopts and incorporates by reference each of the factual allegations contained in Paragraphs 1 through 46 of this Cross-claim against Crossclaim-Defendant CITY OF CHICAGO as this Paragraph 56 of Count II as though fully set forth herein.

57. From the time Officer Kelly witnessed Joseph Baskins physically assault Sgt. Gilmore and at all times relevant thereafter in responding to the emergency situation and reasonably believing he had witnessed Joseph Baskins commit a crime in his presence, Officer Kelly was taking police action as employee, member and agent of the Chicago Police Department of the City of Chicago acting within the scope of his employment with said principal.

58. As employees of the City of Chicago Police Department, Police Officers are required to adhere to the Chicago Police Department rules, regulations and orders while on or off duty, as a condition of their employment.

11

59. As such and pursuant to City of Chicago Police Department rules, regulations and/or orders, Chicago Police Officers are required to take some police action when the commission of a crime occurs in their presence, whether on or off duty.

60. At the time of Officer Kelly's emergency takedown of Joseph Baskins, he was acting within the scope of his employment as a Chicago Police Officer employed by the City of Chicago in that he was responding to an emergency situation and reasonably believed he had witnessed a crime being committed and intervened as he was trained to do by the Chicago Police Department.

61. As required by the City of Chicago Police Department rule, regulations and/or orders, Officer Kelly took police action by attempting to perform an emergency takedown of Joseph Baskins as he reasonably believed Joseph Baskins was committing a crime in his presence and causing serious injury to Sgt. Gilmore.

62. The police action taken by Officer Kelly in performing an emergency takedown on Joseph Baskins whom he reasonably believed was committing a crime is the kind of act Officer Kelly is employed and trained to perform as a City of Chicago Police Officer.

63. Accordingly, the City of Chicago is liable as principal for any torts committed by its employee, member and agent, Officer Kelly while acting within the scope of his employment arising out of the October 30, 2014, occurrence.

WHEREFORE, Crossclaim-Plaintiff, MICHAEL R. KELLY, respectfully requests that this Court enter judgment in his favor and against Crossclaim-Defendant CITY OF CHICAGO pursuant to respondeat superior for any judgment, including attorneys' fees and costs, that may be entered against him and for Joseph Baskins in the underlying lawsuit and for such other relief as this Court deems just and equitable.

### Count III - Indemnification
*Marc Jarocki against the City of Chicago*

64. Crossclaim-Plaintiff MARC JAROCKI hereby adopts and incorporates by reference each of the factual allegations contained in Paragraphs 1 through 46 of his Cross-claim against Crossclaim-Defendant CITY OF CHICAGO as this Paragraph 64 of Count III as though fully set forth herein.

65. Under Illinois law (745 ILCS §10/9-102) public entities such as the City of Chicago are directed to pay any tort judgment for compensatory damages entered against its employees acting within the scope of their employment with said public entity.

66. Officer Jarocki is, and at all times relevant, was a Chicago Police Officer and employee of the City of Chicago acting within the scope of his employment as a Chicago Police Officer in responding to the emergency situation occurring on October 30, 2014, after reasonably believing that he had witnessed Joseph Baskins commit a crime in his presence.

67. As employees of the City of Chicago Police Department, Police Officers are required to adhere to the Chicago Police Department rules, regulations and orders while on or off duty as a condition of their employment.

68. As such and pursuant to City of Chicago Police Department rules, regulations and/or orders, Chicago Police Officers are required to take some police action when the commission of a crime occurs in their presence, whether on or off duty.

69. At the time Officer Jarocki assisted Officer Kelly and retrieved his vehicle to provide safety and medical attention for Sgt. Gilmore he was acting within the scope of his employment as a Chicago Police Officer employed by the City of Chicago in that he was responding to an emergency situation and reasonably believed he had witnessed a crime being committed in his presence as he was trained to do by the Chicago Police Department.

70. As required by the City of Chicago Police Department rules, regulations and/or general orders, Officer Jarocki took police action and assisted Officer Kelly by retrieving his vehicle in an effort to provide the injured Sgt. Gilmore with safety and medical attention after reasonably believing Joseph Baskins had committed a crime in his presence.

71. The police action taken by Officer Jarocki in assisting Officer Kelly by retrieving his vehicle and providing the injured Sgt. Gilmore with safety and medical attention after reasonably believing he had witnessed Joseph Baskins committing a crime is the kind of act Officer Jarocki is employed and trained to perform as a City of Chicago Police Officer.

72. Accordingly, the City of Chicago is statutorily obligated by law to indemnify and pay any judgment for compensatory damages, including associated attorneys fees and costs entered against Officer Jarocki arising out of the October 30, 2014, occurrence.

WHEREFORE, Crossclaim-Plaintiff, MARC JAROCKI, respectfully requests that this Court enter judgment in his favor and against Crossclaim-Defendant CITY OF CHICAGO for indemnification for any judgment, including attorneys' fees and costs, that may be entered against him and for Joseph Baskins in the underlying lawsuit, or, alternatively, for contribution from Crossclaim-Defendant City of Chicago in an amount commensurate with the parties relative degree of fault in causing or contributing to the occurrence, injuries, harm and damages, if any, complained of by underlying Plaintiff Joseph Baskins and for such other relief as this Court deems fair, just and equitable.

### Count IV - Respondeat Superior
*Marc Jarocki against the City of Chicago*

73. Crossclaim-Plaintiff, MARC JAROCKI hereby adopts and incorporates by reference each of the factual allegations contained in Paragraphs 1 through 46 of his Cross-claim

against Crossclaim-Defendant CITY OF CHICAGO as this Paragraph 73 of Count IV as though fully set forth herein.

74. From the time Officer Jarocki witnessed Joseph Baskins physically assault Sgt. Gilmore and at all times relevant thereafter in responding to the emergency situation and reasonably believing he had witnessed Joseph Baskins commit a crime in his presence, Officer Jarocki was taking police action as employee, member and agent of the Chicago Police Department of the City of Chicago acting within the scope of his employment with said principal.

75. As employees of the City of Chicago Police Department, Police Officers are required to adhere to the Chicago Police Department rules, regulations and orders while on or off duty as a condition of their employment.

76. As such and pursuant to City of Chicago Police Department rules, regulations and/or orders, Chicago Police Officers are required to take some police action when the commission of a crime occurs in their presence, whether on or off duty.

77. At the time Officer Jarocki took police action and assisted Officer Kelly and retrieved his vehicle to provide safety and medical attention to Sgt. Gilmore, he was acting within the scope of his employment as a Chicago Police Officer employed by the City of Chicago in that he was responding to an emergency situation and reasonably believed he had witnessed a crime being committed in his presence as he was trained to do by the Chicago Police Department.

78. As required by the City of Chicago Police Department rules, regulations and/or orders, Officer Jarocki took police action and assisted Officer Kelly by retrieving his vehicle in an effort to provide the injured Sgt. Gilmore with safety and medical attention as he reasonably

believed Joseph Baskins had committed a crime in his presence which caused serious injury to Sgt. Gilmore.

79. The police action taken by Officer Jarocki in assisting Officer Kelly by retrieving his vehicle and providing the injured Sgt. Gilmore with safety and medical attention after reasonably believing he had witnessed Joseph Baskins committing a crime is the kind of act Officer Jarocki is employed and trained to perform as a City of Chicago Police Officer.

80. Accordingly, the City of Chicago is liable as principal for any torts committed by its employee, member and agent, Officer Jarocki while acting within the scope of his employment arising out of the October 30, 2014, occurrence.

WHEREFORE, Crossclaim-Plaintiff, MARC JAROCKI, respectfully requests that this Court enter judgment in his favor and against Crossclaim-Defendant CITY OF CHICAGO pursuant to respondeat superior for any judgment, including attorneys' fees and costs, that may be entered against him and for Joseph Baskins in the underlying lawsuit and for such other relief as this Court deems just and equitable.

Respectfully Submitted,

/s/ James E. Thompson
Attorney for Crossclaim-Plaintiffs
Michael R. Kelly and Marc Jarocki

Gottreich Grace & Thompson
311 W. Superior St., Ste. 215
Chicago, Illinois 60654
P: (312) 943-0600
F: (312) 943-7133
jthompson@ggtlegal.com
Attorney No.: 6217334